No. 123,444

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JENNIFER K. SCHWARZ,
*Appellee*,

v.

JULIE A. SCHWARZ,
*Appellant*.

SYLLABUS BY THE COURT

1.

K.S.A. 2018 Supp. 23-3301(a), which permits a provision for grandparent visitation rights in a pending divorce action, does not preclude a separate and independent action for grandparent visitation rights following the death of a parent.

2.

K.S.A. 2018 Supp. 23-3301(b) allows for grandparent visitation when "visitation rights would be in the child's best interests and when a substantial relationship between the child and the grandparent has been established."

3.

The Due Process Clause of the United States Constitution provides heightened protection against government interference with the fundamental right of parents to make decisions concerning the care, custody, and control of their children.

4.

When considering a request for grandparent visitation, in addition to considering under K.S.A. 2018 Supp. 23-3301(b), the best interests of the child and whether a substantial relationship exists between grandparent and child, the court must presume that

1

a fit parent is acting in the child's best interests and must give special weight to a fit parent's proposed grandparent visitation plan. The court cannot adopt a grandparent's conflicting plan without first finding that the parent's proposed plan is unreasonable. The burden is on the grandparent to rebut the presumption that a fit parent's proposed visitation plan is reasonable. Reasonableness is assessed in light of the totality of the circumstances.

5.

In the appeal of a decision involving grandparent visitation, an appellate court has authority to award attorney fees under Supreme Court Rule 7.07(b) (2022 Kan. S. Ct. R. at 51) because the district court had authority under K.S.A. 2020 Supp. 23-3304 to award attorney fees in the proceedings below.

Appeal from Johnson District Court; ERICA K. SCHOENIG, judge. Opinion filed March 18, 2022. Affirmed.

*Ronald W. Nelson*, of Ronald W. Nelson, PA, of Overland Park, for appellant.

*Stephanie Goodenow*, of Goodenow Law, LLC, of Lenexa, and *Dennis Stanchik*, guardian ad litem, of Olathe, for appellee.

Before CLINE, P.J., GREEN, J., and PATRICK D. MCANANY, S.J.

MCANANY, S.J.: In this appeal the mother (Mother) of two minor boys challenges the district court's order giving her sons' paternal grandmother (Grandmother) visitation rights under K.S.A. 2018 Supp. 23-3301. We first address the issue of jurisdiction and determine that the district court had jurisdiction to consider Grandmother's petition, and this court has jurisdiction to consider Mother's appeal. Next, we determine that the district court did not err in granting Grandmother visitation with her grandchildren. Finally, we decline to assess Mother's attorney fees and costs on appeal against Grandmother.

2

Mother and the boys' father (Father) were in the midst of a divorce action when Father suddenly died. Father's death obviously ended both the marriage and the pending divorce action. Thereafter, Mother began limiting contact between her sons and Grandmother. As a result, Grandmother filed this action in November 2018 for grandparent visitation rights under K.S.A. 2018 Supp. 23-3301. This statute allows a district court to grant visitation rights to grandparents upon finding "that the visitation rights would be in the child's best interests and when a substantial relationship between the child and the grandparent has been established." K.S.A. 2018 Supp. 23-3301(b). Grandmother contended that visitation was justified because of the strong bond she had formed with her grandsons before Father's death and it would be in her grandsons' best interest to continue that relationship.

Following the hearing on Grandmother's petition, the district court noted that "K.S.A. 23-3301(c) applies because the children's father is deceased and Petitioner is the children's paternal grandmother." The court granted visitation to Grandmother, and Mother appeals, arguing that the district court violated her constitutional due process rights by infringing on her fundamental right as a parent to make decisions regarding the care, custody, and control of her children.

ANALYSIS

*Subject Matter Jurisdiction*

Before reaching the merits of Mother's appeal, we must address the issue of jurisdiction. If the district court lacked the jurisdiction to enter the order for grandparent visitation, we do not have jurisdiction to address Mother's claims and must reverse the

3

district court's order. See *In re Care & Treatment of Emerson*, 306 Kan. 30, 39, 392 P.3d 82 (2017). Whether jurisdiction exists is a question of law over which our review is unlimited. 306 Kan. at 34.

Although Mother failed to raise the issue of jurisdiction before the district court, that did not invest the district court with subject matter jurisdiction. *Goldman v. University of Kansas*, 52 Kan. App. 2d 222, 225, 365 P.3d 435 (2015). On appeal, we have an independent duty to question subject matter jurisdiction. *Wiechman v. Huddleston*, 304 Kan. 80, 84-85, 370 P.3d 1194 (2016). Subject matter jurisdiction may be raised at any time, including for the first time on appeal on our own motion. *Emerson*, 306 Kan. at 33. In considering the jurisdiction question we must interpret the relevant statutes, which is an issue of law over which we have unlimited review. *Nauheim v. City of Topeka*, 309 Kan. 145, 149, 432 P.3d 647 (2019).

We recently issued a show cause order directing the parties to address the issue of subject matter jurisdiction, specifically directing the parties' attention to contrary conclusions reached by this court about the correct interpretation of the grandparent visitation statute. The parties responded, and the matter is now ripe for our consideration.

The statute in question, K.S.A. 2018 Supp. 23-3301, provides as follows:

"(a) In an action under article 27 of chapter 23 of the Kansas Statutes Annotated, and amendments thereto, grandparents and stepparents may be granted visitation rights.

"(b) The district court may grant the grandparents of an unmarried minor child reasonable visitation rights to the child during the child's minority upon a finding that the visitation rights would be in the child's best interests and when a substantial relationship between the child and the grandparent has been established.

"(c) The district court may grant the parents of a deceased person visitation rights, or may enforce visitation rights previously granted, pursuant to this section, even if the surviving parent has remarried and the surviving parent's spouse has adopted the

4

child. Visitation rights may be granted pursuant to this subsection without regard to whether the adoption of the child occurred before or after the effective date of this act."

Article 27 of chapter 23 of our Kansas statutes, which is referred to in K.S.A. 2018 Supp. 23-3301, is the chapter of our revised Kansas Family Law Code entitled "Dissolution Of Marriage." Here, Mother and Father had been involved in a pending divorce action when Father died. Father's death in August 2018 ended the marriage and the divorce action. "A divorce action is purely personal and ends on the death of either spouse." *Wear v. Mizell*, 263 Kan. 175, 180, 946 P.2d 1363 (1997). It was after Father's death that Grandmother initiated this action in November 2018 for grandparent visitation under K.S.A. 2018 Supp. 23-3301. The district court granted relief under K.S.A. 2018 Supp. 23-3301(c).

The most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be ascertained. *State ex rel. Schmidt v. City of Wichita*, 303 Kan. 650, 659, 367 P.3d 282 (2016). When interpreting a statute, we must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. *Nauheim*, 309 Kan. at 149. When a statute is plain and unambiguous, we do not speculate about the legislative intent behind that clear language. *Ullery v. Othick*, 304 Kan. 405, 409, 372 P.3d 1135 (2016). But if the statute's language is unclear or ambiguous, we turn to the process of statutory construction and review the statute's legislative history to determine legislative intent. *Nauheim*, 309 Kan. at 150.

The conflicting analyses of different panels of our court on the issue of subject matter jurisdiction in a grandparent visitation case indicate an ambiguity in the statute that requires us to resort to statutory construction and the statute's legislative history in order to determine the legislature's intent in enacting this statute.

5

In *T.N.Y. ex rel. Z.H.*, 51 Kan. App. 2d 956, 962-63, 360 P.3d 433 (2015), a panel of our court considered a motion by grandparents seeking visitation with their grandchild in a pending paternity action. Grandparent visitation is not a right at common law. The right exists only to the extent it is created by statute. Thus, the court examined the history of the statutes addressing grandparent visitation over the years. The court concluded that subsection (a) of the current version of the visitation statute, K.S.A. 2014 Supp. 23-3301, clearly limited motions for grandparent visitation to pending dissolution of marriage actions.

The court found that the current version of K.S.A. 2014 Supp. 23-3301 was the result of recodification of prior statutes, which the legislature intended to reorganize and combine without making any substantive changes in the law. In spite of the clear legislative intent to the contrary, the *T.N.Y.* court declared that the enactment of K.S.A. 2014 Supp. 23-3301 in its current form did, in fact, affect a substantive change in the law by stripping away the authority of district courts "to grant grandparent visitation in paternity actions—a power that they held for more than 40 years in Kansas—while continuing to grant district courts the authority to allow grandparent visitation in dissolution of marriage actions." 51 Kan. App. 2d at 964. Thus, in response to the grandparents' claim that limiting grandparent visitation to marriage dissolution actions unconstitutionally treated children of unmarried parents differently than children of married parents in violation of equal protection, the court struck the offending language in subsection (a) of K.S.A. 2014 Supp. 23-3301 which limited requests for grandparent visitation to pending marriage dissolution actions. 51 Kan. App. 2d at 968.

The following year our court took up *Baker v. McCormick*, 52 Kan. App. 2d 899, 380 P.3d 706 (2016). There, the grandparents sought visitation in a Protection from Abuse (PFA) case. The court found that the holding in *T.N.Y.* did not extend to PFA actions.

We need not dwell on the holding in *Baker* because of the unique circumstances of PFA actions. PFA actions do not lend themselves to dealing with issues of grandparent visitation. The Protection From Abuse Act, K.S.A. 60-3101 et seq., makes no mention of grandparent visitation and provides only for temporary custody orders, usually for a period up to one year with the option of a one-year extension. K.S.A. 2020 Supp. 60-3107. The rigid time schedule for PFA actions is incompatible with the time needed to hear and resolve a request for grandparent visitation.

More recently, in *Frost v. Kansas Department for Children and Families*, 59 Kan. App. 2d 404, 413, 483 P.3d 1058, *rev. denied* 313 Kan. 1040 (2021), the court considered K.S.A. 2019 Supp. 23-3301 in the context of an action for grandparent visitation independent of a pending child in need of care (CINC) case. The district court, relying on *T.N.Y.*, dismissed the action for lack of subject matter jurisdiction. On review, our court again examined the history of the various Kansas statutes that provided for grandparent visitation over the years. Like the court in *T.N.Y.*, the *Frost* court determined that the Legislature did not intend to make substantive changes in the recodification of the statutes. But unlike in *T.N.Y.*, the *Frost* court determined that, in fact, no substantive changes resulted from the recodification:

> "[T]he *T.N.Y.* panel found that the plain and unambiguous language of the 2012 law restricts grandparent visitation to divorce actions only, because those are article 27 chapter 23 actions. 51 Kan. App. 2d at 962-63. In other words, by compiling the several laws into one statute, grandparents lost their previously recognized right to file an independent action seeking visitation. It is from this holding that we depart." *Frost*, 59 Kan. App. 2d at 411.

The *Frost* court observed that K.S.A. 2019 Supp. 23-3301 is not part of the statutes dealing with divorce but rather is the first statute in the article entitled "Third Party Visitation."

"[T]here are no words in this statute that says it applies only to divorce cases. True, subsection (a) deals with such cases, but subsections (b) and (c) do not. Just because a comes before b and c in the alphabet, it does not follow that (a) controls (b) and (c)." 59 Kan. App. 2d at 412.

The *Frost* court considered K.S.A. 2019 Supp. 23-3301 in the context of the other statutes that make up article 23, particularly K.S.A. 2019 Supp. 23-3303, which states: "An action for reasonable visitation rights of grandparents as provided by this act shall be brought in the county in which the child resides with the child's parent, guardian or other person having lawful custody."

It seems to us—and the *Frost* court agreed—that if the Legislature intended for K.S.A. 2020 Supp. 23-3301 to confine a grandparent's right to request visitation to a pending marriage dissolution action, then it would not have expanded that right in K.S.A. 2019 Supp. 23-3303 to permit an action in the county where "the child resides with the child's parent, guardian or other person having lawful custody." That could be a county other than the county where the child's parents' divorce case was pending.

The *Frost* court concluded that provisions in article 23 such as K.S.A. 2019 Supp. 23-3303 "show a legislative policy of preserving grandparent rights, and they are not limited to divorce cases. In this article, the Legislature has given grandparents all the tools needed to enforce their visitation rights, not limit them." 59 Kan. App. 2d at 412.

In their written responses to the show cause order, both parties supported the *Frost* analysis. We agree. The most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be ascertained. The court in *T.N.Y.* found that the recodification of various statutes into K.S.A. 2014 Supp. 23-3301 was a substantive change in the law, in spite of the Legislature's clearly expressed intention not to make any

substantive changes. We believe the holding in *Frost*—honoring the clearly expressed legislative intent—is a more sound analysis.

Accordingly, we find that the district court had subject matter jurisdiction to consider Grandmother's independent action for grandparent visitation rights under K.S.A. 2018 Supp. 23-3301.

*The District Court's Ruling on Grandmother's Petition*

We now turn to Mother's claim on appeal that the district court violated her constitutional due process rights by infringing on her fundamental right as a parent to make decisions about the care, custody, and control of her children.

*Additional Facts*

We have already set forth the basic facts. K.S.A. 2020 Supp. 23-3301(b) allows for grandparent visitation when "visitation rights would be in the child's best interests and when a substantial relationship between the child and the grandparent has been established." Grandmother alleged in her petition that she had a substantial relationship with her grandchildren, which included "babysitting the children and taking them on vacations [before Father's death.]" In her reply, Grandmother provided a laundry list of activities she had participated in with the grandchildren. Grandmother asserted in the petition that she would

> "defer to any reasonable and known visitation schedule that Mother articulates, but would
> request at least one weekend per month and a period of time during the summers or
> school breaks in which to take the children on vacation[, and] be able to attend the
> children's school and extracurricular activities to support them."

9

Mother acknowledged Grandmother's ongoing contacts and interactions with the children before Father's death, but she denied that ongoing contact with Grandmother was in the children's best interests. She asserted that Grandmother had a pattern of not seeing her grandchildren "for weeks and months at a time, after she was told by [Father] or [Mother] that various things she had done or said around the children were inappropriate." Mother asked the court to allow her, as a fit parent, to decide whether and to what extent Grandmother should have visitation with the children.

The district court held a hearing at which it determined that a substantial relationship existed and ordered the parties to complete mediation within 60 days to determine a reasonable plan for grandparent visitation.

When mediation was unsuccessful, the court appointed a guardian ad litem (GAL) for the children. After investigating the matter, the GAL recommended a grandparent visitation plan which called for family therapy between Grandmother and the grandchildren for so long as the therapist deemed necessary and up to two hours of visitation per month, after which Grandmother would have visitation one Saturday or Sunday per month for up to eight hours. Grandmother agreed with the GAL's recommendation.

Mother's proposed plan provided that she "should be the one to determine if, when, and under what circumstances, restrictions, limitations, and conditions her children should interact with grandmother." According to Mother, "[a]t this time, . . . it is in her children's best interests that there should be no contact between the children and [Grandmother]," and that Mother "may determine at some time that it is appropriate for the children to interact with [Grandmother]. But now is not that time."

The district court held another evidentiary hearing to consider the competing visitation plans. Grandmother testified that she scaled back her original requests "to give

10

deference to [Mother's] wants and wishes for her children," but Grandmother argued that not having structured contact with her grandchildren deprived her of the opportunity to continue fostering family ties and traditions on Father's side of the family.

Mother testified that she believed no contact was in her children's best interests based on the history of her relationship with Grandmother and Father's extended family. Mother recalled that she "had a great relationship" with Father's family for the decade they had been together before his death, but that was no longer the case. Mother believed that Grandmother blaming Mother for Father's death led to Father's extended family no longer wanting to have contact with Mother. Mother was concerned that Grandmother would tell her grandchildren that Mother had killed Father, based on similar statements Grandmother made to other individuals and to Mother herself.

Mother described incidents during the marriage when Grandmother would storm away after a disagreement with Father and Mother, and they would not see her for "months or weeks at a time." Mother also said that Grandmother often scheduled activities or made plans with the grandchildren before discussing her plans with Father or Mother. Mother did not believe Grandmother would adhere to any of Mother's guidelines for the children if grandparent visitation were awarded. Mother's position, as articulated by her counsel, was that Mother was a fit parent and a "fit parent has an absolute right to refuse to allow a grandparent to visit that parent's child. It's a fundamental right and the Court cannot invade that constitutional right."

Relying on K.S.A 2018 Supp. 23-3301(b) and (c), the district court determined that the proposed plan presented by Grandmother and the GAL was reasonable and that Mother's plan was not. This brings us to Mother's arguments on appeal.

11

ANALYSIS

*Recognition of the Constitutional Presumptions Favoring a Fit Parent*

Grandmother sought visitation with her grandchildren under K.S.A. 2018 Supp. 23-3301, which we have already discussed at length. In this appeal, Mother does not contend that K.S.A. 2018 Supp. 23-3301 is unconstitutional. Rather, she contends that the district court failed to honor Mother's due process rights in applying the statute to the facts at hand. In doing so, she claims the district court infringed on her fundamental right as a parent to make decisions about the care, custody, and control of her children.

More specifically, Mother's first claim is that the district court failed to show that it recognized the presumption that a fit parent is acting in a child's best interests and failed to give any deference to Mother's wishes by giving special weight to her proposed visitation schedule.

Grandmother questions whether Mother preserved this due process challenge for appeal. Generally, issues not raised before the district court—including constitutional grounds for reversal—cannot be raised on appeal. See *Gannon v. State*, 303 Kan. 682, 733, 368 P.3d 1024 (2016); *Bussman v. Safeco Ins. Co. of America*, 298 Kan. 700, 729, 317 P.3d 70 (2014).

But Mother does not challenge the constitutionality of K.S.A. 2018 Supp. 23-3301. Mother's complaint, which she has maintained throughout these proceedings, is that in order to protect her due process rights, the district court, before granting visitation to Grandmother, had to apply the presumption that as a fit parent she was entitled to make decisions which were in her children's best interests. Mother has preserved for review her due process argument.

There is no contest over the due process requirements that apply to this case. The Fourteenth Amendment's Due Process Clause provides that no State shall "deprive any person of life, liberty, or property, without due process of law." The United States Supreme Court has long recognized that the substantive component of the Due Process Clause "provides heightened protection against government interference with certain fundamental rights and liberty interests." *Washington v. Glucksberg*, 521 U.S. 702, 720, 117 S. Ct. 2258, 138 L. Ed. 2d 772 (1997). In our present context, the Court has stated that "perhaps the oldest of the fundamental liberty interests" is the "the fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 65-66, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000). Whether a right to due process has been violated is a question of law over which we have unlimited review. *In re K.E.*, 294 Kan. 17, 22, 272 P.3d 28 (2012).

In her Amended Answer, Mother stated that she "does not believe that the Court should order any grandparent visitation, but should allow her as a fit parent to determine the persons with whom her children will have appropriate contact and connections." Grandmother responded:

> "Grandmother affirmatively states that Mother is a fit parent, and as such, that Mother has a fundamental right to parent the children as she sees fit. Mother's proposed visitation plan should be given its due deference, and the court should presume that, absent findings of unreasonableness in the circumstances, Mother's proposed grandparent access schedule is in the children's best interests.
>
> "Further, Grandmother affirmatively states that the court should permit Grandmother to rebut that presumption and find that Mother's total denial of any visitation plan in this case is unreasonable and contrary to the children's best interests as it subjects them to yet another loss in their young lives."

In her proposed grandparent visitation plan—the plan ultimately adopted by the court—Grandmother stated:

"There is no evidence that Mother is legally unfit to parent the children. Thus, to ensure Mother's Constitutional right to parent, this court must presume that Mother, a fit parent, acts in her children's best interests, and give weight to Mother's proposed access schedule. The court may not reject the Mother's proposed access schedule, unless the court finds Mother's proposed access schedule unreasonable.

". . . Grandmother stipulates that the Constitution requires the court to give great weight and even preference to fit parents versus third parties; however, Grandmother rejects Mother's contention that the court cannot examine relevant facts and make the legal conclusions required under the grandparent visitation statute simply because a fit parent does not welcome the inquiry."

In paragraph 9 of the court's journal entry following the trial, the court stated:

"[Mother] argues that because she is a fit parent she has the right to refuse to allow [Grandmother] visitation with the children. It is well-settled that the trial court is 'not required to make a finding of parental unfitness before awarding grandparent visitation.' *DeGraeve v. Holm*, 30 Kan. App. 2d 865, 867, 50 P.3d 509 (2002). [Mother] cites *In re Paternity of M.V.*, 56 Kan. App. 2d 28, 400 P.3d 1178 (2018) in support of her position. In that case, the Kansas Court of Appeals found that the district court erred by adopting the grandparent's visitation plan without finding that mother's visitation plan was unreasonable. See *id.*, at 36. The Court of Appeals discussed *Troxel v. Granville*, 530 U.S. 57, 65, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000), and its progeny in Kansas and held the following:

'To sum up these decisions, when considering a parent's constitutional due process rights, the best interest of the child standard alone is an insufficient basis to award grandparent visitation. A court must presume that a fit parent is acting in the child's best interests and must give special weight to the parent's proposed visitation schedule. A court cannot reject a fit parent's visitation plan without finding it is unreasonable. But a parent's determination is not always absolute because otherwise the

14

parent could arbitrarily deny grandparent visitation without the grandparent having any recourse.'

"[Mother] is correct that in some cases it would be reasonable for the children's parent(s) to deny visitation to a grandparent. However, in this case [Mother's] position is unreasonable. [Grandmother] has met her burden to prove that grandparent visitation with her is in the children's best interests."

The remainder of the district court's analysis is consistent with these stated principles. The court noted that Mother chose to sever contact between Grandmother and the children after Grandmother openly blamed Mother for Father's death, and Grandmother drove Father's older sons to the family lake house to commit burglary and theft. The court found that Mother was "understandably shaken, hurt, and angry" as a result of Grandmother's actions.

The district court enumerated the five basic reasons why Mother contended that it was reasonable, and in the children's best interests, that they have no visitation with Grandmother. The court noted Mother's position that her relationship with Grandmother after Father's death essentially could not be repaired so as to allow Grandmother to have visitation with the children.

We are satisfied that under the facts of this case, the district court adhered to the constitutional standards it enumerated by giving deference—but not absolute deference—to the decision of Mother as a fit parent regarding her children's contact with their Grandmother. Notwithstanding Mother being a fit parent entitled to all the constitutional deference allowed her in deciding whether and when a third party can spend time with her children, the court found that Mother's proposed visitation plan was unreasonable and not in her children's best interests.

15

*The District Court's Findings and Conclusion Regarding Mother's Visitation Plan*

Mother states that the "court must provide sufficient objective findings on which it bases the determination of unreasonableness that can be reviewed by an appellate court." Mother concludes that the district court's findings are insufficient to support the conclusion that her grandparent visitation plan is reasonable. We do not.

Mother does not challenge the sufficiency of the evidence to support the district court's findings of fact. Rather, she contends that the district court's characterization of Mother's grandparent visitation plan as unreasonable is a mischaracterization of the evidence and a conclusion which is not supported by the district court's findings.

In considering this claim, we examine de novo the facts found by the district court to determine if they constitute legal and relevant evidence that a reasonable person could accept as being adequate to support the district court's conclusion, *i.e.*, whether the evidence is sufficient to support the conclusion that Mother's proposed visitation plan was unreasonable. *State v. Doelz*, 309 Kan. 133, 138, 432 P.3d 669 (2019).

Mother argues that "there was no evidence presented that [she] was *not* considering her children's best interests." This misses the point. The issue is not whether Mother intended to protect her children's best interests, but rather whether her plan for doing so was reasonable. That is why the court in *Troxel* separates intent from action. Thus, while the court must presume that a fit parent is acting in the child's best interests and must give special weight to the parent's proposed visitation schedule, the parent's determination is not always absolute and can be overcome by a finding that the plan is unreasonable. *Troxel*, 530 U.S. at 65. Here, as the district court stated, the burden of proving unreasonableness was on Grandmother.

16

Under K.S.A. 2018 Supp. 23-3301(b), Grandmother must prove the following to obtain visitation rights: (1) a substantial relationship between her and her grandchildren; and (2) that visitation is in the grandchildren's best interests. In addition, Grandmother must overcome the constitutional presumptions we have already addressed.

As to the first element of K.S.A. 2018 Supp. 23-3301(b), Mother does not challenge the district court's finding that a substantial relationship existed between Grandmother and her grandchildren. As to the constitutional presumptions, Grandmother acknowledges that Mother is a fit parent and recognizes that the district court must give "special weight" to Mother's views on grandparent visitation.

Here, the contest was whether Mother's proposed visitation plan was reasonable so as to be in the children's best interests. Obviously, if the plans presented by Mother and Grandmother were both reasonable under the circumstances, the jump ball goes to Mother under the constitutional presumptions.

We first address Mother's plan because if it is reasonable, we need look no further. Mother proposed that Grandmother have no visitation "at this time," but she allowed that she "may determine at some time that it is appropriate for the children to interact with [Grandmother]. But now is not that time."

This court has declined to apply a bright-line rule that a parent's proposed grandparent visitation plan "must be *totally unreasonable* before it can be rejected," and instead the focus must be on whether the parent's position on grandparent visitation is reasonable in light of the child's best interests when considering the totality of the circumstances. *In re Cathey*, 38 Kan. App. 2d 368, 376, 165 P.3d 310 (2007).

Focusing our attention on the findings made in paragraphs 2 and 8 through 15 of the court's journal entry following the trial, the district court addressed the testimony essential to resolve the issue of the reasonableness of Mother's no-visitation plan.

In paragraph 8 of the journal entry, the district court described the extensive contact Grandmother had with the grandchildren before Father's death.

In paragraph 9, the district court recognized from *Troxel* that the predicate for adopting Grandmother's plan for grandparent visitation is a finding that Mother's visitation plan is unreasonable. Thus, the district court concluded that "in some cases it would be reasonable for the children's parent(s) to deny visitation to a grandparent. However, in this case [Mother's] position is unreasonable. [Grandmother] has met her burden to prove that grandparent visitation with her is in the children's best interests."

In paragraph 10, the district court recited the reasons why Mother contended that it was reasonable, and in the children's best interests, that they have no visitation with Grandmother.

In paragraph 11, the court noted Mother's position that her relationship with Grandmother after Father's death essentially could not be repaired was "not a reasonable position in light of the facts of this case." The court explained a number of things Mother complained of had not interfered with Grandmother regularly seeing the children and having a close relationship with them prior to Father's death. The court concluded:

> "[Mother] is now selectively using [Grandmother's] behaviors against her as a basis to prohibit visits between [Grandmother] and the children. This has resulted in [Mother] arbitrarily denying [Grandmother] grandparent visitation since Father's death. And, ultimately, the children are being deprived of their relationship with their paternal grandmother which they enjoyed before their Father's death. This is not in the children's best interests. In *Davis v. Heath*, 35 Kan. App. 2d 86, 94, 128 P.3d 434 (2006), the Court

18

of Appeals found the parents' decision to 'cut off' grandmother's visitation with their children to be 'unreasonable.'"

In paragraph 12, the court referred to Grandmother's grieving process following her son's death and her "transgressions" against Mother, for which Grandmother apologized. Mother complains on appeal that the district court ignored testimony that undermined the credibility of Grandmother's remorse and apology. But the court found credible Grandmother's remorse and her apology to Mother, along with Grandmother's promise to respect Mother's "boundaries and wishes related to the children." This was supported by the testimony of Grandmother's therapist. We do not redecide on appeal the issue of Grandmother's credibility. See *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018).

In paragraph 13, the court noted the importance of the grandchildren continuing the relationship with their extended paternal family they enjoyed before Father's death.

In paragraph 14, the court noted that while the children had been engaged in therapy since Father's death, there is no evidence that Grandmother's actions or behaviors have necessitated such treatment.

In paragraph 15, the court adopted the GAL's visitation plan, which Grandmother supported, as in the best interests of the children, making particular note of the plan's period of family therapy which will reintegrate Grandmother with her grandchildren. As a reminder, the GAL's plan called for family therapy for Grandmother and the grandchildren for so long as the therapist deems necessary, plus up to two hours of visitation per month; followed by visitation for up to eight hours on one Saturday or Sunday of each month.

19

Mother questions the district court's characterization of her plan as unreasonable. Mother cites *Southern Kansas Stage Lines Co. v. Public Service Comm.*, 135 Kan. 657, 662, 11 P.2d 985 (1932), and Black's Law Dictionary 1379 (5th ed. 1981) for synonyms for "unreasonable" and notes several, including: foolish, unwise, absurd, silly, preposterous senseless, and stupid. We do not find any of these helpful. Here, we are to resolve the question of reasonableness by considering the totality of the circumstances. *In re Cathey*, 38 Kan. App. 2d at 376.

It goes without saying that reasonableness at its most basic level requires conformity to the requirements of the law. Beyond that, it seems to us that reasonableness requires a balancing of stimulus and response—finding a response that is commensurate with the nature and seriousness of the stimulus. Here, the stimulus is Mother's observations about Grandmother's conduct vis-à-vis her grandchildren. The response is Mother's visitation plan designed to deal with Grandmother's influence on the grandchildren.

Context is everything. Mother's plan of visitation must be a reasonable response when considering her children's best interests in the totality of the circumstances. It is one thing for a concerned Irish father to temporarily lock his young daughter in the tower upon observing the longboats of invading Vikings on a nearby shore. On the other hand, it is quite another for an overzealous guardian to permanently lock Rapunzel in the tower in an effort to protect her forever from the amorous advances of any suitors.

Here, the district court addressed Mother's complaints about Grandmother's conduct and found they were insufficient to deprive the children from having contact with Grandmother. As the court noted, several of Mother's complaints related to conduct that predated Father's death and were not found sufficient at the time to deprive Grandmother of contact with her grandchildren. Further, it is clear from the

recommendation of the GAL charged with protecting the interests of the grandchildren that he believed that Mother's plan was not reasonable.

Mother's plan calls for Grandmother to have no contact whatsoever with the grandchildren. Under Mother's plan, it is unlikely that the relationship between Mother and Grandmother ever will be restored so as to permit Grandmother to have visitation. Under the circumstances, denying the grandchildren any access whatsoever to Grandmother is not a balanced response to Grandmother's conduct. It unreasonably denies the grandchildren the benefits of maintaining a relationship with Grandmother and with their paternal extended family.

On the other hand, Grandmother's recommendation provides for an expert intermediary to try to foster the relationship between Grandmother and grandchildren through family counseling and to monitor its progress before finding it safe to expand Grandmother's visitation. Grandmother will be responsible for paying the family therapist. While clearly Mother is a fit parent, her visitation plan is unreasonable under the totality of the circumstances and is not in her children's best interests. We find no error in the district court's characterization of Mother's visitation plan.

Finally, Mother claims the district court erred in placing the burden on Mother to prove that grandparent visitation would not be in her children's best interests.

Grandmother knew and understood from the outset that the burden of proof was on her. She acknowledged in her pleading that Mother is a fit parent with the fundamental right to parent her children as she sees fit, and that the court must give deference to Mother's visitation plan and must presume that Mother's plan is in her children's best interests absent a showing that it is unreasonable under the circumstances. Moreover, Grandmother acknowledged that it was her burden to show that Mother's plan was "unreasonable and contrary to the children's best interests."

21

Following this protocol, the district court correctly weighed Grandmother's evidence against the fit-parent presumption and found that Grandmother rebutted the presumption that Mother's proposed visitation plan was in the children's best interests.

We find no error of law in the district court's analysis of the substantive issues raised in this appeal. There is substantial evidence in the record to support the district court's conclusion that Mother's plan—which essentially called for no visitation—was unreasonable under the circumstances. The district court applied the correct legal standards and relied on sufficient objective findings to support its decision.

*Motion for attorney fees*

After docketing this appeal, Mother moved us to assess Grandmother with Mother's attorney fees and costs incurred in this appeal. She seeks attorney fees of $18,325 and costs of $2,126.88. She cites Supreme Court Rule 7.07(b) (2022 Kan. S. Ct. R. at 51) as authority for the assessment of fees. She cites no authority for the assessment of costs, but we presume she is basing this claim on Supreme Court Rule 7.07(a)(1).

Mother's counsel attached an affidavit detailing the fees and costs incurred in preparing Mother's appeal. The costs consisted of the court reporter charges for transcribing the proceedings in the district court and the appellate filing fee.

Grandmother opposes the motion. She states that she has already paid Mother's fees incurred in Mother's defense of the proceedings before the district court. Grandmother contends that it would be inequitable to assess appellate fees and costs against her on top of the fees she has already paid for Mother's attorney in the district court proceedings.

22

Kansas follows the American Rule, meaning the parties to litigation are expected to pay their own attorney fees and expenses unless a statute authorizes the award or there is an agreement between the parties allowing attorney fees. *Snider v. Am. Fam. Mut. Ins. Co.*, 297 Kan. 157, 162, 298 P.3d 1120 (2013); see also *Harder v. Foster*, 58 Kan. App. 2d 201, 206, 464 P.3d 382 (2020) (describing history and adoption of the American Rule). Supreme Court Rule 7.07 is in derogation of that general rule. Supreme Court Rule 7.07(b) states: "An appellate court may award attorney fees for services on appeal in a case in which the district court had authority to award attorney fees." (2022 Kan. S. Ct. R. at 52). Here, the district court had authority to award fees in the proceedings below under K.S.A. 2020 Supp. 23-3304. Under this statute, fees "shall be awarded to the respondent" in Article 33 third-party visitation cases before the district court unless justice and equity require otherwise. K.S.A. 2020 Supp. 23-3304. Thus, we have the authority to assess fees and costs in this appeal.

In doing so we are not bound by the language of K.S.A. 2020 Supp. 23-3304 requiring the assessment of costs and fees for the respondent "unless the court determines that justice and equity otherwise require." K.S.A. 2020 Supp. 23-3304. That statute clearly applies to proceedings before the district court. It does not control the assessment of costs and fees on appeal.

Supreme Court Rule 7.07(b)(2) refers us to Rule 1.5 of the Kansas Rules of Professional Conduct (2022 Kan. S. Ct. R. at 333) to determine the reasonableness of a lawyer's claimed fee when the amount being sought under Supreme Court Rule 7.07 is being challenged. Here, Grandmother does not challenge the amount of fees now claimed. The issue turns on whether any fees should be awarded to Mother in this appeal.

Mother raises two bases in support of her claim for attorney fees and costs on appeal. First, she cites her various claimed concerns raised at trial about Grandmother having visitation with her children. In paragraph 10 of the district court's journal entry,

23

the court addressed Mother's five principal concerns about Grandmother having visitation. The court dealt with each of Mother's concerns and concluded that they were insufficient to deny visitation to Grandmother. The court stated:

> "[M]any of [Grandmother's] behaviors that [Mother] cites as reasons to keep the children away from [Grandmother] were ongoing when Father was alive. Despite this, [Mother] allowed [Grandmother] to regularly see the children and have a close relationship, to travel with the older child, and [Mother] and Father used [Grandmother] as a babysitter. [Mother] testified that Father's death did not cause her relational issues with [Grandmother], but it has 'exacerbated' them. [*Mother*] *is now selectively using* [*Grandmother's*] *behaviors against her as a basis to prohibit visits between* [*Grandmother*] *and the children. This has resulted in* [*Mother*] *arbitrarily denying* [*Grandmother*] *grandparent visitation since Father's death.*" (Emphasis added.)

For her second basis for assessing costs and fees, Mother cites her concerns about "the large value and amount of things that Appellee bought for the children and that she used to fund other expenses of the family which, in Mother's view, Appellee held over the family as leverage against them." This apparently had to do with Grandmother buying toys and gifts for the children and arranging elaborate trips for them, all contrary to Mother's wishes. In considering this claim the district court found credible Grandmother's promise to respect Mother's boundaries and wishes related to the children. The court safeguarded this finding by adopting the visitation plan that called for very limited contact between the Grandmother and her grandchildren—only two hours a month outside of therapy sessions—until the family therapist determined that further therapy was unnecessary.

Considering the totality of the circumstances, we conclude that these two bases that Mother relies upon as support for her claim for appellate fees and costs are inadequate for us to deviate from the American Rule that each party should be

24

responsible for his or her own attorney fees and expenses. Mother's motion for the assessment of attorney fees and costs is denied.

Affirmed.