NOT DESIGNATED FOR PUBLICATION

No. 126,565

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

T.D. and D.D.,
*Appellees*,

v.

B.R.,
*Appellant*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; KATHLEEN M. LYNCH, judge. Submitted without oral argument. Opinion filed October 25, 2024. Reversed and remanded with directions.

*Jeffrey Leiker*, of Leiker Law Office, P.A., of Overland Park, for appellant.

*Ronald P. Wood*, of Clyde & Wood, LLC, of Overland Park, for appellee.

Before HURST, P.J., ISHERWOOD and PICKERING, JJ.

PER CURIAM:  B.R., the natural father (Father) of the minor child at the heart of this case, H.R., appeals from the district court's written order establishing a grandparent visitation plan. When the child's natural mother passed away, the district court awarded custody to Father rather than the maternal grandparents (Grandparents), and disputes ultimately ensued over Grandparents' visitation rights. The district court attempted to arrive at a compromise between the parties' proposed visitation plans, but Father contends his plan should have been adopted because it was reasonable and in H.R.'s best interests. Following careful consideration of the matter and the law which governs its resolution, we find Father's argument persuasive. Under the constitutional presumptions favoring a parent's right to make decisions concerning the care, custody, and control of their

1

children, the district court should have adopted Father's visitation plan to the extent it was reasonable and served the best interests of the child. Where Father's plan contemplated regular visits between H.R. and Grandparents that were sufficient to preserve their bonded relationship, we find it was reasonable and reflected consideration of an arrangement that was beneficial to H.R. Accordingly, the decision of the district court is reversed.

FACTUAL AND PROCEDURAL BACKGROUND

In September 2021, the natural mother of 10-year-old H.R. lost her battle with cancer, and Grandparents sought to be named his guardian because he lived with them for eight years, along with his half-siblings. According to Grandparents, Father and H.R. had minimal contact until 2020, when the two developed a more consistent relationship.

The district court ultimately ordered that H.R. be placed with Father, even though Grandparents retained guardianship over his half-siblings. When Father attempted to take custody of H.R., however, a verbal altercation ensued. Eventually, Father was able to leave safely with the child.

H.R. was permitted to continue almost daily contact with Grandparents after school. At the end of the school semester, Father approached Grandparents to set a plan for them to see the child over Christmas 2021, but Grandfather again became combative. Ultimately, H.R. and Grandparents enjoyed a trip to the movies together shortly before Christmas, and H.R. spent a day and a half with them to celebrate the holiday.

In January 2022, Father reached out to Grandfather to arrange for H.R. to visit them, but he received no response. When Father contacted the child's aunt, he learned that Grandfather was purposefully ignoring Father's communications. Father persisted in

his efforts to arrange opportunities through Grandparents for the siblings to see one another, but his requests were continually denied.

The difficulties between the parties waged on, so in February 2022 Grandparents filed a petition to formalize a visitation schedule. The district court issued a temporary plan, which enabled H.R. and Grandparents to spend one weekend a month together, and Father complied without objection.

The court conducted a hearing on the matter during which the parties stipulated that Grandparents had a substantial relationship with H.R. and it was in the best interests of the child to continue that relationship. The parties simply could not come to an agreement on how best to maintain that relationship.

Maternal Grandmother was the first to testify, informing the court that H.R. lived with Grandparents for eight years of his life, and by living with them, he largely had the benefit of growing up in the same home as his four half-siblings. She explained that because of the strong bond they shared with H.R., they preferred to spend more time with him than the single weekend a month instituted by the court's temporary order. Further, it was difficult to identify a single weekend that would allow them to maximize their time together and give H.R. the pleasure of participating in family events and celebrations. She testified that the situation was further complicated by Father's refusal to communicate with them effectively or allow H.R. to spend his visitation time at their house. Rather, they were denied the opportunity to visit with H.R. for the span of several months, or Father otherwise insisted that Grandparents spend their time with H.R. at Father's house. Grandmother requested a visitation plan that consisted of alternating weekends, shared holidays, and two weeks during the summer, as she believed that amount of time was warranted for H.R. to maintain the strong bond he shared with them.

Father also had the opportunity to testify and took that time to explain that from his perspective, Grandparents did not respect his wishes or the boundaries of the court's visitation order by consistently pursuing additional time with H.R. As to Grandmother's assertion that he insisted the visitations occur at his home, Father explained that H.R. frequently requested to invite his siblings over to Father's house, but Grandparents repeatedly declined the invitation without explanation. Father acknowledged the parties struggled to accommodate the court's temporary order for H.R. to visit Grandparents one weekend a month because their respective availabilities did not always align. But Father assured the district court that he never denied Grandparents their required visitation time and that the time they spent actually surpassed what the court ordered. Father also testified that it was his understanding that when H.R. visited Grandparents, he ended up spending the evenings at his aunt's home, without his half-siblings. When it came time to request a permanent visitation plan, Father asked the district court to simply formalize the monthly visits set out in the temporary plan.

Ultimately, the district court issued a written order to outline what it believed to be "reasonable grandparent visitation" under the circumstances. It awarded Grandparents the second weekend of each month with H.R., to be spent at their home, as well as four hours on Christmas, two weeks during the summer, and the Saturday preceding or following H.R.'s birthday. To the extent Grandparents were unable to accommodate the days as outlined by the court, their visitation would be forfeited without latitude for make-up time. It also ordered Grandparents to pay Father's attorney fees.

Father now brings his case before this court to determine whether the district court erred in declining to adopt his visitation plan as the more reasonable and beneficial to H.R.'s best interests.

*The district court erred in not adopting Father's visitation plan.*

In asserting that error occurred, Father takes the position that the district court did not fully recognize the constitutional presumption that parents have the right to make decisions concerning the care of their children. He argues that if the district court fully appreciated those presumptions, it would have recognized its obligation to adopt his proposed visitation plan, unless it was unreasonable. Grandparents counter that Father's proposed visitation plan was too vague and failed to allow them to share holidays or summer visitation with H.R.

*Standard of Review*

The Fourteenth Amendment's Due Process Clause provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The United States Supreme Court has long recognized that the substantive component of the Due Process Clause "provides heightened protection against government interference with certain fundamental rights and liberty interests." *Washington v. Glucksberg*, 521 U.S. 702, 720, 117 S. Ct. 2258, 138 L. Ed. 2d 772 (1997). The Court has also stated that "perhaps the oldest of the fundamental liberty interests" is the "fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 65-66, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000). Whether a right to due process has been violated is a question of law over which we have unlimited review. *In re K.E.*, 294 Kan. 17, 22, 272 P.3d 28 (2012).

This court also examines de novo the facts found by the district court to determine whether they constitute legal and relevant evidence that a reasonable person could accept as being adequate to support the district court's conclusion, i.e., whether the evidence is sufficient to support a determination that Father's proposed visitation plan was less

reasonable than that offered by Grandparents. See *State v. Doelz*, 309 Kan. 133, 138, 432 P.3d 669 (2019).

*The district court should have deferred to Father's visitation plan under the constitutional presumptions favoring a parent's rights to make decisions that are reasonable and which the parent deems to be in the child's best interests.*

Under Kansas Law, the district court may grant grandparents of a minor child reasonable visitation rights "upon a finding that the visitation rights would be in the child's best interests and when a substantial relationship between the child and grandparent has been established." K.S.A. 23-3301(b). These elements were met in this case by the stipulation of the parties. However, when a grandparent's proposed visitation plan conflicts with that of a parent, the grandparent must also overcome the constitutional presumption which favors the parent. *Schwarz v. Schwarz*, 62 Kan. App. 2d 103, 115-16, 506 P.3d 950, *rev. denied* 316 Kan. 758 (2022).

For convenience, recall the parties' proposed visitation plans consisted of Father's request for a schedule that mirrored the district court's temporary order which enabled Grandparents to visit with H.R. for one weekend a month. Grandparents' suggested a plan that allowed them to spend alternating weekends with H.R., share holidays, and enjoy two weeks during the summer with him.

"Parents have a constitutionally protected right to determine how their children will be raised. [Citation omitted.]" *In re Hood*, 252 Kan. 689, 692, 847 P.2d 1300 (1993). Stemming from this right is the fundamental presumption that a fit parent will act in the best interests of their child in making decisions concerning visitation. *Kansas Dept. of SRS v. Paillet*, 270 Kan. 646, 658-59, 16 P.3d 962 (2001). Thus, to secure court-ordered visitation, a grandparent has the burden to prove that it would be in the best interests of the child for the two to share visitation time. *DeGraeve v. Holm*, 30 Kan. App. 2d 865, 867, 50 P.3d 509 (2002).

A parent's determination is not always absolute. To hold otherwise would pave the way for parents to arbitrarily deny grandparent visitation. Rather, the district court must presume a parent is acting in the child's best interests, it must specifically indicate it afforded a parent's wishes the necessary deference, it should give special weight to a parent's proposed visitation schedule or respect their decision to deny visitation or contact, and it must clearly articulate its reasoning. *In re Creach*, 37 Kan. App. 2d 613, 619-20, 155 P.3d 719 (2007). A court cannot invade the constitutional rights of a parent to decide who, how, and when anyone sees or interacts with the child, absent a finding that the parent is behaving unreasonably and arbitrarily denying a grandparent visitation under the guise of the child's best interests. *DeGraeve*, 30 Kan. App. 2d at 867.

Therefore, the proper focal point is whether, under the totality of the circumstances, the visitation plans proposed by the parties were reasonable and in the child's best interests. *In re Cathey*, 38 Kan. App. 2d 368, 376, 165 P.3d 310 (2007). To the extent that criteria is satisfied by both proposed plans, then Father's plan—as that of the parent—should be granted preference. See *Schwarz*, 62 Kan. App. 2d at 116. This court has declined to apply a bright-line rule that a parent's proposed grandparent visitation plan must be wholly unreasonable before it can be rejected.

In arriving at our resolution of this matter, we draw a bit of guidance from *Schwarz*. In that case, a grandmother sought visitation with her grandchild through K.S.A. 23-3301, and the district court granted her request, despite opposition from the child's mother. The mother appealed and argued that the district court failed to recognize the presumption that a fit parent acts in a child's best interests and neglected to afford her wishes the requisite degree of deference by granting her proposed visitation schedule special weight. However, the mother's proposal was for no formal visitation plan to be adopted because she, as a fit parent, should be permitted to decide "'with whom her children will have appropriate contact and connections.'" 62 Kan. App. 2d at 113.

7

The district court found that the mother's plan was unreasonable because it excluded the possibility of any visitation between the child and their grandparent. On review, this court declined to find that decision erroneous and concluded that the grandmother met her burden to demonstrate that the mother's plan was unreasonable given that it would deny the child the benefits of maintaining a relationship with their extended family. 62 Kan. App. 2d at 114. In comparison, the grandmother's proposal suggested the pursuit of services from an expert intermediary who could ensure a healthy relationship was fostered between the child and the grandmother by virtue of family counseling. The *Schwarz* court found that, under the totality of the circumstances, regardless of the mother's fitness, her proposal was unreasonable and did not serve the best interests of the child. 62 Kan. App. 2d at 119.

Unlike *Schwarz*, Father in this case did not seek to wholly eliminate Grandparents' visitation rights. Rather, he simply requested permanent implementation of the monthly visits contemplated by the court's temporary order. Since Father's proposal enables H.R. to maintain a bonded relationship with Grandparents, his half-siblings, and his extended family, the factors which rendered the mother's proposal unreasonable in *Schwarz* are not present here. Furthermore, Grandparents' plan here did not include any details that elevated it beyond the plan proposed by Father, as did the grandmother's in *Schwarz* with her suggestion for family counseling. Rather, the two visitation plans here were on equal footing and, in such an instance, the constitutional presumptions discussed above require this court to defer to Father's proposal. Accordingly, a new hearing is necessary to ensure the proper standard is applied when resolving Grandparents' visitation challenge.

Reversed and remanded with directions.